## NESBITT v. CAVENDER.

Where an uneducated person deliberately executes a lease, receives and retains a copy of it, and makes several payments which are credited by the lessor as rent in a book kept by the lessee, this lease may not afterwards be explained away, and a trust *ex maleficio* imposed upon lessor's land in favor of the lessee, by inconsistent parol testimony.

Before WITHERSPOON, J., Richland, October, 1888.

The appeal was from the following decree:

The plaintiff, in his original complaint, sought to have a certain deed for a house and lot from George L. Dial, president of the Columbia Building and Loan Association to Charles Cavender, declared to be a mortgage to secure the payment of $300 by plaintiff. The said deed on Circuit was held to be a mortgage, but upon appeal the judgment of the Circuit Court was reversed, and the cause remanded for a new trial, with leave to plaintiff to amend his complaint by charging a constructive trust in his favor.

The above entitled amended complaint was filed, in which plaintiff, in substance, alleges that he mortgaged to the Columbia Building and Loan Association a certain house and lot in Columbia, which was sold under judgment of foreclosure Feb. 3, 1879, and purchased by George L. Dial, president of said association; that said house and lot was worth $1,500; that after said foreclosure sale, Dial agreed to reconvey said premises to plaintiff for $300, the estimated amount of the debt due by plaintiff and the costs of foreclosure; that he applied to the defendant, Thomas S. Cavender, to advance the $300, to be secured by a mortgage of the premises; that plaintiff can neither read nor write, and

3—30

relied upon what Dial told him could be done to raise the money; that Thomas S. Cavender agreed to advance the said sum of $300 out of funds of his son, Charles Cavender, and paid the same to Dial, who, in accordance with his own agreement with plaintiff, and cognizant of the agreement between plaintiff and Thomas S. Cavender, conveyed the legal title to Charles Cavender at the instance of Thomas S. Cavender, with the understanding that Thomas S. Cavender, as agent of his son, would convey the premises to plaintiff upon the payment of the $300 so advanced by Thomas S. Cavender.

Plaintiff alleges that through his ignorance he accepted from Thomas S. Cavender a *lease*, which he supposed was a security for the money so advanced by Cavender; that he made payments to Thomas S. Cavender under this impression, and did not know of any other relation existing between himself and Cavender until some time in May, 1884; that on the 8th of March, 1884, Thomas S. Cavender procured his son, Charles Cavender, to convey said premises to himself, and attempted to eject plaintiff from said premises; that George L. Dial is dead, but sufficient appears to show that under the pretence of aiding plaintiff, Thomas S. Cavender had the premeditated and fraudulent design of availing himself of Dial's generosity, intended for the sole benefit of plaintiff, and thereby securing to himself plaintiff's property at not exceeding one-fifth of its value; that the whole contrivance was a scheme of fraud, a speculation upon plaintiff's necessities and the benevolence of Dial, whereby Thomas S. Cavender at the time procured the legal title from Dial. Under these circumstances, plaintiff contends that a Court of Equity will impress a *constructive trust* upon the premises in plaintiff's favor.

The defendant, Thomas S. Cavender, after acquiring title from his son, Charles Cavender, borrowed money from the defendant, Rose L. Sprague, and gave a mortgage of the premises to Rose L. Sprague, to secure said loan. Thomas S. Cavender issued a distress warrant against plaintiff, which proceeding has been enjoined until the further order of the court. The defendants in their answers deny the allegations of plaintiff's amended complaint. The cause was heard upon the amended complaint and answers, the evidence taken by the master at the former hearing,

subject to the proper objections, and the argument of counsel. The case will be considered upon the assumption that none of the defendants have higher equities than the others.

A Court of Equity will impress a *constructive trust* on property in favor of one equitably entitled to the same, when the *legal title* to the property is obtained by another, through actual fraud, misrepresentation, concealment, undue influence, or under similar circumstances, which renders it unconscientious for the holder of the legal title to retain it, and enjoy the beneficial interest. A constructive trust will arise under such circumstances in favor of one who may never, perhaps, have had any legal estate in the property. Such trusts are termed *ex maleficio* or *ex delicto*, and their forms and varieties are practically without limit. 2 *Pom. Eq. Jur.*, 628. In order that the doctrine of trusts *ex maleficio* with respect *to land* may be enforced under any circumstances, there must be something more than a mere verbal promise, however unequivocal, otherwise the statute of frauds would be virtually abrogated; there must be an element of positive fraud accompanying the promise, and by means of which the acquisition of the legal title is wrongfully consummated.

Equity does not pretend to enforce verbal promises in the face of the statute, but endeavors to prevent and punish fraud by taking from the wrong-doer the fruits of his deceit, and it accomplishes this object by its beneficial and far-reaching doctrine of constructive trusts. 2 *Pom. Eq.*, 631; *Schmidt* v. *Gatewood*, 2 Rich. Eq., 178; *Kinard* v. *Hiers*, 3 *Id.*, 428. It will be observed that plaintiff cannot enforce the alleged verbal agreement with reference to the reconveyance of the premises in the absence of positive fraud, on account of the statute of frauds, or obtain relief in consequence of the non-performance of such alleged agreement. In order to entitle plaintiff to relief in this action, it must appear that, in acquiring the title from Dial, the defendant, Thomas S. Cavender, perpetrated a positive fraud upon plaintiff. This can be shown by parol testimony.

What are the facts and circumstances relied upon by plaintiff to show that Cavender obtained the title from Dial through fraudulent means? It appears, and I find as matter of fact, that plaintiff, on May 18, 1871, mortgaged his house and lot in Co-

lumbia to the Columbia Building and Loan Association, of which George L. Dial was the president. Under judgment of foreclosure, the premises were sold by the master February 3, 1879, and bid off by Dial as president for $140. After the sale Dial agreed to reconvey to plaintiff for $300, which was estimated to be the amount due by plaintiff, with the costs of foreclosure. After making several ineffectual efforts to get some one to advance the $300, and take the title from Dial as a security for the loan, plaintiff finally applied to the defendant, Thomas S. Cavender. Cavender at first declined, but upon the earnest solicitations of plaintiff paid Dial $300 out of money belonging to his son, Charles Cavender, and on March 27, 1879, took title from Dial in the name of Charles Cavender. On the same day (March 27, 1879) Thomas S. Cavender, as agent of his son, Charles, executed a lease of said premises to plaintiff, "to hold for the term of the natural life of said James Nesbitt and Susannah, his wife, and the survivor of them," the lessee agreeing to pay for rent of said premises the sum of $36 per annum in monthly instalments of $3 each, and to pay all taxes and necessary repairs. In said lease, plaintiff further agreed that upon default in the payment of rent for thirty days, Charles Cavender, or his agent, would be authorized to take possession of said premises.

It is contended by plaintiff that Dial only agreed to reconvey to plaintiff at the inadequate price of $300, and that Thomas S. Cavender, in acquiring the title, fraudulently took advantage of a bargain intended by Dial for plaintiff's special benefit. It appears that the property was conveyed by Dial to Cavender at about one-third of its estimated value. Whilst the amount paid by Cavender to Dial seems to be inadequate, as compared with the estimated value, yet the fact also appears that the property had been recently sold by the master and bid off at $140. It further appears that after diligent efforts, plaintiff failed to get any one else to advance $300 on the property and take the title as security. Assuming that the amount paid by Cavender was inadequate, as contended, this of itself, unaccompanied by other inequitable circumstances, would not be sufficient to impress upon the property a constructive trust *ex maleficio* in plaintiff's favor.

Did Dial convey the property to Cavender for the special

benefit of plaintiff, at less than the market value of the property ?
If Dial was living, he could furnish the highest and best evidence
of the circumstances under which he conveyed the title to Cav-
ender.  His unfortunate death deprives the court of his disinter-
ested testimony, and his object and purpose in conveying the
property to Cavender can only be discovered by reference to the
evidence before the court.  It does not appear that Dial ever
expressed to Cavender, or to any other disinterested person,
either before or after the conveyance, his intention to convey
the property to Cavender at less than its value for plaintiff's
special benefit.  The conveyance does not indicate such purpose,
nor does it appear that Cavender ever agreed to accept the con-
veyance from Dial at less than its value for plaintiff's special
benefit.  Plaintiff was not present at the time that Dial conveyed
to Cavender.  Mr. Smith, a director and the secretary of the
association, testifies that he never knew of the property being
offered to any one but plaintiff at $300, and expressed the opinion
that it was not.  Mr. Smith, however, will not undertake to say
positively that the property was not offered to any else.  It does
not appear that any one would have given more for the property.
The fact that plaintiff failed to find any one that would advance
as much as $300 on the property before he applied to Cavender,
considered in connection with the price at which the property
sold at the master's sale, would seem to indicate that there was
then no demand for the property at any price.  As it appears
that the association was winding up its affairs and anxious to real-
ize its assets, and that Dial conveyed to Cavender for a sufficient
amount to reimburse the association, it would be as reasonable to
conclude, from the evidence, that Dial conveyed to Cavender for
the benefit of the association, as to conclude that the conveyance
was made to Cavender for the special benefit of plaintiff at an
inadequate price.

As it does not appear, either by the acts or declarations of
Dial, that Cavender was guilty of a positive fraud in acquiring
the title, the inquiry arises, did Cavender obtain the title from
Dial by perpetrating a positive fraud upon plaintiff?  The evi-
dence as to the agreement between plaintiff and Cavender is not
only conflicting, but the agreement seems to have been indefinite.

It, however, does appear from the plaintiff's testimony that Cavender at first refused, but finally consented, at plaintiff's urgent solicitation, to pay $300 and take title from Dial. Cavender insists that he took the title from Dial unconditionally. Plaintiff contends that upon the repayment of the purchase money, Cavender agreed to reconvey the property to him, and that in his ignorance and through the misrepresentations of Cavender he was induced to sign the lease, believing that it was a mortgage to secure the purchase money.

What facts are disclosed by the evidence with reference to the execution of the lease? Wallace, an intelligent colored man, was a witness to the lease. He testifies that it was read over to plaintiff, who seemed more anxious than Cavender to have the paper executed, A duplicate of the lease was furnished plaintiff. In his complaint plaintiff alleges that he did not discover until May, 1884, his relations to Cavender under the lease. It appears from the evidence that plaintiff advised with counsel as to the lease in May, 1882; and plaintiff testifies that his daughter, Nancy, told him in May, 1883, that the paper was a lease and not a mortgage. It also appears from the evidence that plaintiff kept a book in which Cavender gave receipts on account of rent for various small payments made by plaintiff from May 9, 1881, to April 16, 1884, the various payments varying in amount from $2.60 to $12. The evidence fails to show that Cavender was guilty of a positive fraud in procuring plaintiff's signature to the lease. Plaintiff's conduct does not sustain his allegation, that advantage was taken by Cavender of his ignorance.

I cannot discover such evidence of positive fraud upon the part of Thomas S. Cavender, in acquiring the title from George L. Dial, as would impress upon the property conveyed a constructive trust *ex maleficio* in plaintiff's favor. I find as matter of fact, that Thomas S. Cavender did not acquire the title to the property conveyed by George L. Dial, president of the Columbia Building and Loan Association, to Charles Cavender, dated March 27, 1879, by positive fraud. I conclude as matter of law, that the house and lot conveyed by George L. Dial, president as aforesaid, to Charles Cavender is not impressed with a constructive trust *ex maleficio* in plaintiff's favor, as alleged in plaintiff's

amended complaint. It is therefore ordered, adjudged, and decreed, that plaintiff's amended complaint herein be dismissed with costs.

*Messrs. A. C. Moore* and *J. D. Pope*, for appellant.

*Messrs. Lyles & Haynsworth*, contra.

December 7, 1888. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This case has been to this court before. 27 S. C., 1. In the judgment upon the first hearing, it was stated that the plaintiff had mortgaged his house and lot on Green street, of Columbia, to the Columbia Building and Loan Association, and said lot was sold under foreclosure, and bought in by the said association for $140. The amount of his debt at that time was about $300, and the officers of said association offered to reconvey said property to the plaintiff for that amount. The defendant, Thomas S. Cavender, paid it in the name of his son, Charles, and took titles in his name on March 27, 1879. Shortly after his purchase, the said T. S. Cavender executed a lease of the premises to the plaintiff, "to hold for the term of his natural life and that of his wife, Susannah, and the survivor of them," it being stipulated in said lease that the lessee should pay the sum of $36 per annum as rent, in monthly instalments of $3 each, &c.; upon default of which for thirty days, the said Charles Cavender should have the right to reënter and repossess the premises, &c. It seems that the plaintiff was furnished with a book in which Cavender receipted for sundry payments made as "rent," which was subsequently mislaid or lost. The parties failing to agree in reference to some matter connected with the land, Cavender instituted proceedings to oust Nesbitt from the premises, who then brought this action to set aside the said lease as fraudulent and void, and to declare the deed from Dial to Cavender a mortgage, &c.

The issues were referred to the master, who took a mass of testimony (now printed in the Brief), and disallowed the prayer of the complaint. Upon exceptions to this report, Judge Pressley found as a fact that the deed from the building association to

Cavender was intended as a mortgage, and that the lease to plaintiff was a device to foreclose the same easily, on non-payment of the interest thereon called "rent"; and held that the deed should stand as a mortgage to secure the loan made to Nesbitt to buy the land. Upon appeal, this court adjudged that the testimony failed to establish an agreement, that the deed from Dial to Cavender, at the instance of Nesbitt, was intended to operate as a mortgage from Nesbitt to Cavender, but remanded the case, with leave to the plaintiff to amend his complaint, so as to raise the question, whether the whole transaction, considered together, amounted to a constructive trust on the part of Cavender in favor of the plaintiff, Nesbitt, in regard to the said lot and the $300, which Cavender advanced to purchase it. See 27 S. C., 1.

Accordingly the case went back, and the plaintiff amended his complaint in conformity with the leave given. The parties agreed that the new issue should be heard upon the same evidence taken and reported by the master on the former trial, as found in the printed case for appeal, reserving the right to object to any or all of said testimony, on the grounds (1) statute of frauds; (2) irrelevancy to the new issue; (3) hearsay or *res inter alios acta,* &c. Upon this evidence, the question made by the amended pleadings was argued before Judge Witherspoon, who found as matter of fact, "that Thomas S. Cavender did not acquire the title to the property conveyed by Dial to Charles Cavender by positive fraud"; and held as matter of law, that the house and lot conveyed by George L. Dial, president, &c., to Charles Cavender is not impressed with a constructive trust *ex maleficio* in plaintiff's favor, and dismissed the amended complaint with costs.

From this decree the plaintiff appeals upon the ground, "That upon the evidence in the cause, and upon that of the disinterested witnesses alone, and the equities applicable thereto, there was a clear case of constructive trust established in favor of the plaintiff; and when his honor held otherwise, as he has done in the decree, he set at naught the controlling evidence, and entirely misconceived the equities, which, in every aspect of the case, entitled the plaintiff to a decree."

The only question now before the court is, whether Cavender acquired title to the lot conveyed to him by Dial under such cir-

cumstances and in such manner as to fasten on it a constructive trust in favor of Nesbitt. Mr. Pomeroy says: "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means, or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably enentitled to the same," &c. 2 *Pom. Eq. Jur.*, §§ 1053, 1055.

The question was one of fact, which was decided by the Circuit Judge adversely to the plaintiff. Was that error? It is known to be the rule of this court not to disturb the finding of a Circuit Judge upon a question of fact, unless it is clearly against the weight of the evidence. We have carefully re-read the testimony in this case, and we find it not only conflicting, but in many respects absolutely contradictory. Dial, who executed the deed, is now dead, and we know nothing of what actually occurred at the time the deed was executed, except from the parties immediately interested. But without considering their testimony, it seems to us that the circumstances show with reasonable certainty the following facts: That at the foreclosure sale, Nesbitt's lot was bid in by the building association at a great sacrifice; that their debt being about $300, they kindly offered to let Nesbitt have the land back upon the payment of that sum; that not being able to raise it, he applied to Cavender to help him, his object clearly being to get the property into hands where he might redeem it by refunding the money advanced, with interest; and in this way alone (as the friend of Nesbitt), Cavender got into the business, and (sending Nesbitt for Dial) he received titles, paying less than one-half of its value for a lot which he really did not want—knowing at the time that Nesbitt, if not also Dial, believed that the purchase was in some way for the benefit of Nesbitt. From these circumstances alone, it does seem to us that the natural conclusion would be, that Cavender paid for the lot on the faith and confidence that it was for the benefit of Nesbitt, upon the refund-

ing of the purchase money and interest.   If this were all, I should certainly so conclude.

But it seems that on the very day the deed to Cavender bears date, viz., March 27, 1879, Nesbitt executed to Cavender a formal lease of the premises, "to hold for the term of the natural life of the said James Nesbitt and Susannah, his wife, and the survivor of them"—agreeing to pay as "rent" for the premises $36 per annum, in monthly instalments of $3 each, and also to pay taxes, repairs, &c., and to quit and deliver up the same to lessor peaceably and quietly at the end of the term.   "It is expressly agreed that if there is default in the payment of the rent above stipulated for thirty days after the same is due, the said Cavender shall have the right to reënter and repossess the said premises," &c.   This lease is in its terms very explicit, and most certainly admitted that the absolute title was in Cavender, and, if genuine, does indicate that the only advantage Nesbitt stipulated for was the privilege of renting the lot during his life for $36 per annum.   Conceding that the parol testimony on both sides may be conflicting and inconsistent, there can be no mistake about the terms of this written paper, which, considered as an admission of the plaintiff, negatives the idea of a constructive trust.

It is urged, however, that the execution of this paper, called a lease, was a deliberate imposition and fraud on the part of Cavender, an intelligent business man, upon an ignorant, uneducated colored man, and should be entirely disregarded, or at least considered as a mere device to enable Cavender to obtain easy possession of the premises, upon the failure to pay the monthly interest.   There seems to be no doubt that Nesbitt was eager to execute the paper, and did sign it in the presence of one Wallace (clerk in Cavender's office), who testified that some changes in the paper were made at the instance of Nesbitt; that it was read over to him, and he expressed no dissatisfaction with it.   Besides, it seems that he acquiesced in it for years, and kept a little book in which from time to time Cavender receipted for small payments made as "rent."   The terms of the paper are in no way obscure or equivocal, but, on the contrary, very explicit.   If Nesbitt was uneducated, it does not appear that he was lacking

in that common sense, which, unaided, was quite sufficient to understand the general purpose of the paper. When persons of ordinary understanding undertake to enter into contracts, they may not escape their just consequences simply on the ground of over-confidence or want of proper care and prudence upon their part. Under the rules of evidence, a deed in writing, deliberately executed, is of a character too solemn to be lightly brushed away by inconsistent and inconclusive parol testimony. We cannot say that the judge was in error in finding that the evidence was insufficient to show that Cavender acquired the title to the lot conveyed by George L. Dial to Charles Cavender by positive fraud, and that in consequence the lot was impressed with a constructive trust *ex maleficio* in favor of the plaintiff.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.